IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA          :

        v.                              :          CRIMINAL NO. 22-199-3

PETER AN                          :

### GOVERNMENT'S SENTENCING MEMORANDUM

Defendant Peter An, together with his co-conspirators, defrauded a wide array of banks and other lenders, as well as the Small Business Administration ("SBA"), by fraudulently obtaining numerous loans, including SBA 7(a) loans prior to the COVID-19 pandemic and Economic Injury Disaster Loans ("EIDLs") and Paycheck Protection Program ("PPP") loans during the pandemic, taking advantage of an emergency relief effort for their own benefit. They obtained these loans with false loan applications and fake documents that supported these false applications. Collectively, the actions of defendant An and his co-conspirators caused losses of more than $9 million to the banks and the SBA, and An himself was responsible for obtaining fraudulent loans totaling approximately $591,540.

For these reasons, as well as for the reasons provided below, the government recommends a sentence within the advisory guideline range of 21 to 27 months' imprisonment, absent any basis for a below-guideline sentence addressed in the supplemental sealed attachment to this sentencing memorandum.

A sentencing court follows a two-step process, first calculating the range under the Sentencing Guidelines, and then considering that range along with all pertinent 18 U.S.C. § 3553(a) factors in determining the appropriate sentence. *See* USSG § 1B1.1 (Nov. 1, 2025).[1]

At the second step of the sentencing process, "[t]he record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted). *See also Rita v. United States*, 551 U.S. 338, 356 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decision making authority."); *United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014) (en banc) ("Failure to give 'meaningful consideration' to any such argument renders a sentence procedurally unreasonable which, when appealed, generally requires a remand for resentencing.").

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors.

## I.   BACKGROUND

On August 31, 2022, the defendant pled guilty to one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349. The defendant admitted that he filed applications for three

---

[1]   Courts previously followed a three-step process, in which the court first calculated the guideline range, then next ruled on motions for departure, before considering the 3553(a) factors. *See United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). In an extensive amendment to the Guidelines effective November 1, 2025, the Sentencing Commission eliminated the departure provisions in the manual and dictated the two-step process described above.

fraudulent SBA loans, two of which were funded, and that these loan applications were submitted by interstate wire.

As explained in greater detail in the Presentence Report and the government's plea memorandum, the defendant acknowledged that two types of SBA loans were involved in the conspiracy: EIDL loans and PPP loans. These loans had the following purposes and requirements:

1. EIDL loans and EIDL Advance loans were in existence prior to the pandemic, but expanded to address small business owners needs during the pandemic. The SBA could fund EIDL advance loans up to $10,000, and fund EIDL loans up to $2 million. In order to obtain these loans, applicants had to certify that they provided accurate information about a company's operations, including its number of employees, gross revenue, and cost of goods sold for the 12 months preceding the economic disaster.

2. PPP loans were intended to enable existing businesses to retain their current employees during the pandemic. In order to obtain an initial PPP loan, an authorized representative of a business had to acknowledge the program's rules, including that the business needed to have been in operation for a certain number of years, and to state, among other things, its average monthly payroll expenses and number of employees. Furthermore, documentation, usually including business tax returns, was required to substantiate payroll expenses. PPP loans were funded by lenders using their own money, and were one hundred percent guaranteed by the SBA. In order to obtain approval, businesses were required to use PPP loan proceeds on certain specific expenses, including payroll. Prior to

June 5, 2020, PPP loans were eligible for loan forgiveness if the businesses spent 75 percent of the loan on payroll within a designated period—usually eight weeks after receiving the proceeds. After that date, the requirement dropped to 60 percent. A second draw was also possible if loan requirements were met.

The conspiracy charged in this case was headed by a Florida accountant who prepared documents supporting fraudulent SBA loans for customers throughout the United States, including California-based co-conspirator Frank Hamilton, a charged party who recruited other borrowers. (Many of these borrowers knew one another through church, stock trading classes, or both.) There was no business purpose for these loans. Rather, An's and his co-conspirators' intent was to use the funds to invest in the stock market and for their personal use.

Significantly, most of the conspirators did not have a functioning business. As a result, Hamilton and co-conspirator Michael Jones assisted them in obtaining a "shelf company," that is, a company that had been created by a vendor who registered a non-functioning business in a state with minimal corporate regulations, paid all required fees for several years, and then sold the company "off the shelf" so that it could be used by individuals who needed to make it appear that they had a company that had been in business for a significant length of time. A few of the borrowers did have existing businesses.

Defendant An, with the assistance of co-conspirator Michael Jones, acquired a shelf company named Authora LLC. This company had no business functions, no revenue, and no employees. An and others paid a fee to Hamilton and Jones to have websites, telephone numbers, and emails created for their shelf companies to make them appear to be legitimate active businesses.

The Florida accountant prepared most of the false documents used to back up the loan applications. These false supporting documents often included the names of co-conspirators and/or the names of the non-functioning companies owned by co-conspirators. These company and individual names were used as employees, contractors, and vendors on the fraudulent applications and supporting documents. Statements on the applications concerning the revenue and expenses of An's companies and the purposes for which loan proceeds would be used were also false.

For PPP loans, the majority of fraudulently obtained loan proceeds were sent to one of Hamilton's companies, falsely noting on the wire transfer that the purpose was payroll so that the co-conspirators could qualify for loan forgiveness. If forgiveness was granted, the understanding was that funds transferred to Hamilton were to be used to invest in the stock market and/or returned to the borrowers. For EIDL loans, all of the money was sent to Hamilton, with the understanding that he would be responsible for the loan payments.

Between June 2019 and May 2020, An applied for three loans totaling approximately $941,540.00. Two loans totaling approximately $591,540.00 were funded. The applications for these loans all contained false statements, including false revenue, expenses, payroll, and employees. Importantly, the stated purpose for the loans was also false, as the true purpose was to use the loan proceeds to invest in the stock market and for An's personal use.

Moreover, these three applications, set forth below, were submitted by means of interstate wire communications to the lenders and/or the SBA:

| Company | Lender / SBA | Type | Application Date | Funded | Amount |
|---------|--------------|------|------------------|--------|--------|
| Authora | Bank D | PPP | 5/6/2020 | Yes | $467,640.00 |

| Company | Lender / SBA | Type | Application Date | Funded | Amount |
|---|---|---|---|---|---|
| Authora | SBA | EIDL | 4/6/2020 | Yes | $123,900.00 |
| Authora | Bank B | 7(a) | 6/25/2019 | No | $350,000.00 |

## II.     SENTENCING CALCULATION

### A.     Statutory Maximum Sentence

The maximum sentence is a term of imprisonment of 20 years, three years supervised release, a fine of $250,000, and a special assessment of $100. Restitution of $591,540 should also be ordered.

### B.     Sentencing Guidelines Calculation

The Probation Office correctly calculated the defendant's advisory guideline range as follows:

| | |
|---|---|
| Base offense level, USSG § 2X1.1(a) and 2B1.1(a)(1) | 7 |
| Loss between $550,000-$1,500,000, USSG § 2B1.1(b)(1)(H) | +14 |
| Adjusted Offense Level (subtotal) | 21 |
| Acceptance of Responsibility, USSG § 3E1.1(a) | -2 |
| Assisting in prosecution of own misconduct, USSG § 3E1.1(b) | -1 |
| Zero point offender, USSG § 4C1.1 | -2 |
| Total offense level | 16 |

Guideline level 16, Criminal History Category I results in a sentencing range of 21 to 27 months' imprisonment.

## III.     ANALYSIS

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). "These requirements mean that '[i]n the usual sentencing, . . . the judge will use the Guidelines range as the starting point in the analysis and impose a sentence within the range." *Peugh v. United States*, 569 U.S. 530, 542 (2013) (quoting *Freeman v. United States*, 564 U.S. 522, 529 (2011) (plurality opinion); ellipsis in original). "Common sense indicates that in general, this system will steer district courts to more within-Guidelines sentences." *Peugh*, 569 U.S. at 543. "The federal system adopts procedural measures intended to make the Guidelines the lodestone of sentencing." *Id.* at 544.

In addition, this Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

### A.    Consideration of the 3553(a) Factors

#### 1.  The Nature and Circumstances of the Defendant's Crimes

The defendant engaged in a serious offense. He filed for and received $591,540 in loans for which he was not qualified through the use of a non-functioning company that had fictitious employees, revenue, and expenses. Although he gave Hamilton $498,012.32 of this money, Hamilton subsequently returned $72,960.00 of the proceeds. An therefore received $166,487.68 in fraudulent loan proceeds but made no payments on the loans. Through his actions, a substantial amount of taxpayer money was lost. Perhaps even more importantly, by committing fraud in programs designed to help small businesses and keep people employed during an economic disaster, it may be more difficult for qualified businesses to obtain needed funds during future times of need. For this reason, as well as to deter others from engaging in the same type of loan fraud, a sentence within the guideline range is appropriate.

#### 2.  The History and Characteristics of the Defendant

The defendant is 40 years old. The defendant is a resident of California. He lives with his wife. He works as an accounting manager for a medical device manufacturing company. He is co-owner of an electronic bike company and co-owns an ATM business with his wife. He previously worked as a client service associate at Morgan Stanley. Neither the defendant's history nor personal characteristics provide the basis for a variance from the sentencing guidelines.

#### 3.  The Need for the Sentence Imposed To Reflect the Seriousness of the Offense, To Promote Respect for the Law, and To Provide Just Punishment for the Offense

The offense in this case is serious, as the defendant and his co-defendants obtained more than seven million dollars as a result of fraudulent loan applications. The funds fraudulently

obtained were allocated to support small businesses during the pandemic. This offense limited the funds available to genuine business applications and contributed to the erosion of trust in the relief programs that were designed to help small businesses. A guideline sentence would reflect the seriousness of the offense and promote respect for the law.

### 4.  The Need for Adequate Deterrence and Protect the Public from Further Crimes by the Defendant

The need for deterrence under Section 3553(a) is not limited to deterrence of the particular defendant. *See, e.g.*, *United States v. Jordan*, 435 F.3d 693, 698 (7th Cir. 2006) (describing how Section 3553(a) "specifies that the court may consider the need for general deterrence and respect for the law"); *United States v. Glover*, 431 F.3d 744, 751 (11th Cir. 2005) (noting that pre-*Booker* and post-*Booker*, "the underlying goals of the statute and the Guidelines are retribution, general deterrence, incapacitation, and rehabilitation" (internal quotation marks omitted)); *see also United States v. Yeaman*, 248 F.3d 223, 232 (3d Cir. 2001) (referring to Section 3553(a)'s goals of "general deterrence, specific deterrence, retribution, and rehabilitation"). Here, general deterrence is particularly important. The defendant worked with others to commit a more than seven million dollar fraud. Other fraudsters enticed by greed should be sent a message that such conduct will be severely punished. In this case, it is unknown whether there is a need for specific deterrence.

For these reasons, a sentence within the guideline range would provide deterrence to both this defendant as well as others who consider engaging in loan fraud.

### 5.  The Need To Avoid Disparities

While every case is unique, the government's recommended sentence will avoid unwarranted sentencing disparities. The guidelines themselves "are designed to restrain unwarranted disparities." *United States v. Sample*, 902 F.3d 1196, 1201 (10th Cir. 2018) (citing

- 9 -

*Gall v. United States*, 552 U.S. 38, 54 (2007)). That is what the government requests here. 18 U.S.C. § 3553(a)(4), (a)(6). The guidelines here appropriately account for the defendant's conduct and reflect potentially mitigating factors. They account for the defendant's lack of criminal history by assigning him a criminal history category of I and applying the Zero Point Offender reduction.

### 6. Educational or Vocational Training and Medical or Correctional Treatment

In 2007, Defendant An earned a Bachelor of Arts degree from the University of California. He previously held FINRA Series 7 and 66 licenses for the sale of securities, which expired around 2008. In 2016, he earned a Master of Business Administration degree from the University of California. In 2022, he passed the Securities Industry Essential (SIE) exam.

The defendant is not in need of educational or vocational training. The defendant's physical and mental health needs can be met regardless of whether he is in custody.

### 7. The Kinds of Sentences Available

As stated previously, the defendant is subject to a prison sentence. He could receive supervised release. He is not eligible for probation. He could receive a fine. A special assessment of $100 is mandatory.

### 8. Restitution

Restitution of $591,540 should be ordered in this case.

*          *          *

Therefore, in sum, all of the appropriate considerations of sentencing favor the imposition in this case of a within-guideline sentence. As noted, the Sentencing Guidelines present "the lodestone of sentencing," *Peugh*, 569 U.S. at 544, and that guide is once again persuasive in this case.

### B.   <u>Supervised Release</u>

Pursuant to Sections 5D1.1 and 5D1.2 of the Sentencing Guidelines, as amended effective November 1, 2025, the Court is directed to conduct an "individualized assessment" when deciding whether to impose a term of supervised release, and if supervised release is imposed, how long the term should be. The Court is further directed to state in open court its reasons for imposing or not imposing a term of supervised release, and its reasons for the length of a term imposed. Further, Section 5D1.3 sets forth mandatory conditions of a term of supervised release, and "discretionary conditions" that the Court may impose, following the same individualized assessment.

The guideline commentary, consistent with 18 U.S.C. § 3583(c), provides that the "individualized assessment" should rest on consideration of the same sentencing factors under 18 U.S.C. § 3553(a) that are considered with respect to a term of imprisonment, with the exception of Sections 3553(a)(2)(A) (the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense") and 3553(a)(3) ("the kinds of sentences available"), which do not apply with regard to supervised release decisions.

In this case, a term of supervised release of three years is warranted. A term of supervised release will aid the defendant's reentry to society, and will advance the goals of sentencing to deter criminal conduct, § 3553(a)(2)(B), assure that the defendant receives treatment for his physical and mental health conditions, § 3553(a)(2)(D), § 3553(a)(2)(D), and pays restitution to victims, § 3553(a)(7).

This assessment also supports imposition of all of the mandatory and standard conditions of supervised release listed in Section 5D1.3, as well as this additional condition: The defendant shall participate in mental health treatment if directed to do so by the Probation Office.

## IV.    CONCLUSION

The government's final recommendation regarding sentencing appears in the sealed attachment.

Respectfully submitted,

DAVID METCALF
United States Attorney

*/s/ Judy Smith*
JUDY SMITH
Assistant United States Attorney

MARGARET A. MOESER
Chief, Money Laundering, Narcotics
& Forfeiture Section

*/s/ Varun Trivedi*
VARUN TRIVEDI
Trial Attorney, Money Laundering, Narcotics
& Forfeiture Section

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this Sentencing Memorandum has been served by email Michael J. Engle, Esq. at mengle@stradley.com

<u>*/s Judy Smith*</u>
JUDY SMITH
Assistant United States Attorney

DATED:  <u>April 6, 2026.</u>